**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**NIKIYA M.,**

                              **Plaintiff,**

**v.**

                                                          **19-CV-1296**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

---

**DECISION AND ORDER**

        Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. No. 17.  Nikiya M. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits.  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 11, 13.  For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied, and the Commissioner's motion (Dkt. No. 13) is granted.

**BACKGROUND**

        On December 31, 2009, Plaintiff filed for Supplemental Security Income ("SSI").  She received an unfavorable ruling on December 7, 2011, which she did not appeal.  Tr. at 70-90.[1]  Plaintiff thereafter filed a second application for SSI on January 30,

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 6.

2012, alleging that she became disabled on December 8, 2011, by blindness in her left eye, Type 2 Diabetes, Depression, Anxiety, Post-Traumatic Stress Disorder, disrupted sleep, chronic back problems, limited mobility, inability to stand for long periods of time, obesity, lightheadedness in the morning, and frequent headaches.  Tr. at 130, 137-42, 157.  Plaintiff's application was denied at the initial level and she requested review. Administrative Law Judge William M. Weir ("the ALJ") conducted a hearing on June 10, 2013.  Tr. at  31-69.  On March 24, 2014, the ALJ issued a decision in which he found that Plaintiff was not disabled and, therefore, not eligible for benefits.  Tr. at 14-30.  The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner.  Plaintiff thereafter commenced an action in the United States District Court seeking review of the Commissioner's decision.  Upon review, the matter was remanded to the Commissioner.

The ALJ conducted a second hearing on February 1, 2019.  Tr. at 672-722. Plaintiff, who was once again represented by counsel, testified as did a vocational expert ("VE").  Tr. at 672-722.  On May 24, 2019, the ALJ issued a second decision finding that Plaintiff was not disabled.  Tr. at 643-71.  Plaintiff commenced the current action on September 23, 2019.  Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

The claimant bears the ultimate burden of proving disability throughout the period for which benefits are sought.  *See* 20 C.F.R. § 416.912(a); *Schauer v. Schweiker*,

2

675 F.2d 55, 59 (2d Cir. 1982).  The claimant is disabled only if she shows that she is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which has lasted, or can be expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909; *see Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

A disabling physical or mental impairment is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).  Congress places the burden upon the claimant to establish disability by requiring her to "furnish such medical and other evidence of the existence [of disability] as the Commissioner of Social Security may require."  42 U.S.C. § 1382c(a)(3)(H)(i).  The function of deciding whether a person is under a disability within the meaning of the Act belongs to the Commissioner.  20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997).

The Commissioner has established a five-step sequential evaluation for adjudicating disability claims set forth at 20 C.F.R. § 416.920.  Plaintiff has the burden at the first four steps.  The Commissioner has the burden at the fifth step of demonstrating that the claimant can perform other work existing in significant numbers in the national economy, but the burden of proving disability is always on the claimant.  *See* 20 C.F.R. § 416.920; *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (stating that "[t]he claimant

bears the ultimate burden of proving [disability] throughout the period for which benefits are sought" (citation omitted)).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  Section 405(g) limits the scope of the Court's review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009).  "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's

4

determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position.  *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 30, 2012, the date of her SSI application.  Tr. at  648.  The ALJ concluded at step two that Plaintiff's recurrent abscesses, diabetes mellitus, sciatica, and obesity were severe impairments.  Tr. at 649.[2]  At step three, he concluded that Plaintiff did not have an impairment or combination of impairments which met or equaled the Listings, giving special consideration to Listing 1.04 (Disorders of the Spine), Listing 8.04 (Chronic Infections of the Skin or Mucous Membranes), and Social Security Ruling 02-1p (Consideration of Obesity).  Tr. at 653.

---

[2] This Court presumes the parties' familiarity with Plaintiff's medical history, which is detailed at length in the papers.

The ALJ found that Plaintiff retained the RFC to perform sedentary work as defined by 20 C.F.R. § 416.967(a), except that she should work in an environment with air that is controlled for humidity, gases, temperature, dust, or fumes, and she should not work at unprotected heights or around dangerous tools, machines, or chemicals.  Tr. at 654-64. At step four, the ALJ found that Plaintiff could not perform any past relevant work.  Tr. at 664.  The ALJ then proceeded to step five, where he relied upon the testimony of the VE in finding that Plaintiff could do other work that existed in significant numbers in the national economy, such as the sedentary jobs of switchboard/telephone operator, and ticket seller. Tr. at 665.  Thus, the ALJ concluded that Plaintiff was not disabled.  Tr. at 665.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 11, 13.  Plaintiff argues that remand is required because the ALJ did not sufficiently explain why Plaintiff's chronic abscesses did not meet or medically equal Listing 8.04, failed to adequately support his finding that she was non-compliant with treatment, and did not fully evaluate Plaintiff's pain.  Dkt. No. 11-1, pp. 18-29.  The Commissioner counters that Plaintiff's abscesses do not meet or equal Listing 8.04, and that the ALJ adequately detailed Plaintiff's non-compliance with insulin, and properly evaluated her subjective complaints.  Dkt. No. 13-1, pp. 6-17.  Having reviewed the record in its entirety, this Court finds that the ALJ did not err in reaching his decision and that the RFC was substantially supported.

**Plaintiff's Skin Impairment Did Not Meet or Equal Listing 8.04**

It is Plaintiff's burden to show that her impairment met or equaled the requirements of the Listing.  *See Perez*, 77 F.3d at 46.  "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet Listing 8.04, an individual must have "[c]hronic infections of the skin or mucous membranes, with extensive fungating or extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment as prescribed."  20 C.F.R. Part 404, Subpart P, App'x 1, § 8.04.  Under this Listing, a claimant's skin lesions must "result in a very serious limitation," in that they "very seriously limit the use of more than one extremity," or "very seriously limit your ability to ambulate."  20 C.F.R. Part 404, Subpart P, App'x 1, § 8.00(C).  The regulations further explain that "[i]f you do not have continuing treatment as prescribed, if your treatment has not lasted for at least 3 months, or if you do not have extensive skin lesions that have persisted for at least 3 months," the impairment will not meet Listing 8.04.  20 C.F.R. Part 404, Subpart P, App'x 1, § 8.00(H)(1). "By persist, we mean that the longitudinal clinical record shows that, with few exceptions, your lesions have been at the level specified in the listing."  20 C.F.R. Part 404, Subpart P, App'x 1, § 8.00(G).

As previously noted, the ALJ found that Plaintiff's abscesses did not persist for at least three months despite continuing treatment, and did not cause very serious limitations for Plaintiff as required by Listing 8.04.  Tr. at 653 (referring to Tr. at 363-65, 397, 400-01, 407-08, 442-45, 595-97, 613, 615, 955, 959, 962, 969, 971, 1047-49, 1056-58, 1064, 1066, 1092, 1098, 1100, 1136, 1140, 1142, 1174, 1179, 1182-83, 1206, 1217-18, 1270, 1273, 1142, 1174, 1179, 1182-83, 1206, 1217-18, 1270, 1273, 1287-88, 1293-94).  The ALJ's determination was not conclusory, as Plaintiff contends.  To the contrary, the ALJ discussed nearly every instance of Plaintiff receiving abscess treatment during the relevant period, which began in January 2012, with the exception of one medical visit in March 2019.  Tr. at 1287.  The record does not show that any of Plaintiff's abscesses persisted for more than a few days or a few weeks, that any of them persisted long after Plaintiff received treatment, or that any of them seriously impacted her ability to ambulate or use one or more of her extremities.

A complete history of Plaintiff's abscesses during the relevant period is as follows.  On May 5, 2012, Plaintiff went to the emergency department for a breast abscess and was treated with incision and drainage.  The treatment notes indicate that her symptoms developed one week prior.  Tr. at 363, 365.  Plaintiff was treated with antibiotics, and by May 31, she indicated that she was feeling well and her pain was controlled.  Tr. at 397.  Although the infection was resolved, there was a residual hard mass in Plaintiff's breast, which was excised on June 22, 2012.  Tr. at 400-01.  No abnormalities in movement were noted as a result of this abscess.  Tr. at 366, 397.

Plaintiff was treated for a right thigh abscess on July 23, 2012, but her gait and station remained normal.  Tr. at 407-08.  She went to the emergency department on August 8, 2012 with several complaints, including a yeast infection, elevated blood sugar, and a right thigh abscess.  Tr. at 442.  An examination showed that the abscess had drained spontaneously, and that there was no area of fluctuance, induration, edema, or erythema.  Tr. at 444.  She retained a normal range of motion.  Tr. at 444.  She was advised to complete her course of antibiotics.  Tr. at 445.

On October 15, 2012, Plaintiff was treated for a right arm abscess and a bump on her right thigh.  Tr. at 595.  The treatment notes do not indicate any resulting limitations in mobility.  Tr. at 595-97.  Plaintiff sought treatment for a left thigh abscess on February 19, 2013.  Tr. at 613.  However, she walked with a normal gait and station during her medical visit.  Tr. at 615.

Plaintiff next sought treatment for an abscess over two years later, in September 2015, when she was treated for bilateral thigh abscesses, one of which required surgical debridement.  Tr. at 955, 959, 962.  At the time, she told her doctor that her abscesses usually went away on their own.  Tr. at 959.  She also reported working at a job where she sat all day.  Tr. at 969.  A physical examination revealed that she had a normal range of motion even before undergoing the surgical debridement procedure.  Tr. at 971.

More than six months later, Plaintiff visited the emergency department for treatment of a perineal abscess, which she said had been present for two weeks.  Tr. at 1047.  Plaintiff complained that it had reached the point where it had become painful to move.  Tr. at 1047.   After undergoing incision and drainage (Tr. at 1048-49), she returned for a wound re-evaluation two days later, and no abnormalities in movement were noted. Tr. at 1056-58.

On August 8, 2016, Plaintiff was treated for a right groin abscess that had been present for one day.  Tr. at 1064.  While the bump was tender to palpation, Plaintiff did not complain of difficulty with movement, and she exhibited a normal range of motion. Tr. at 1066, 1068.  The abscess was drained and Plaintiff was discharged home.  Tr. at 1068.

On December 18, 2016, Plaintiff went to the emergency department with a pilonidal abscess, which was drained.  Tr. at 1092.  Plaintiff reported that she had never had an abscess in this area before.  Tr. at 1098.  A discharge summary indicated that she was ambulating without difficulty, and a physical examination revealed that she had a normal range of motion.  Tr. at 1092, 1100.

Plaintiff was not treated for an abscess again until September 27, 2017, when she went to the emergency department for treatment of a right labial abscess.  Tr. at 1136, 1140.  It was noted to be draining well, and a medical provider cleansed the wound.

10

Tr. at 1142. She was advised to follow up with her primary care doctor.  Tr. at 1142.
Plaintiff did not complain of any resulting difficulty with ambulation.  Tr. at 1142.

Approximately one year later, on September 28, 2018, Plaintiff went to the
emergency department with multiple complaints, including chest pain, vaginal discharge,
and a one-centimeter right thigh abscess that was draining spontaneously.  Tr. at 1174,
1179.  A physical examination did not show any problems with ambulation, and it does not
appear that Plaintiff's thigh abscess required any treatment.  Tr. at 1182-83.

Plaintiff sought treatment for a right groin abscess the following month, on
October 30, 2018, which she said arose five days prior to the visit.  Tr. at 1206.  The
abscess was drained and Plaintiff received antibiotics.  She reported on November 2, 2018
that it was no longer painful.  Tr. at 1217.  At a wound re-evaluation on November 6, 2018,
her range of motion was normal.  Tr. at 1218.

Plaintiff was evaluated for a right groin abscess on February 7, 2019, which
was draining on its own.  Tr. at 1270.  Incision and drainage were performed, and she was
advised to continue the antibiotics that her primary care physician had prescribed.  Tr. at
1273.

On March 8, 2019, Plaintiff complained of right thigh and left vulva abscesses
and was treated with antibiotics and an antibacterial wash.  Tr. at 1287-88.  Although
Plaintiff refers to a March 13, 2019 treatment note indicating "lesionswelling" [sic], it

appears that the "swelling" in the treatment note actually refers to Plaintiff's leg.  Tr. at

1293 (PA reporting that "[p]atient presents with lesionswelling [sic] discussion of x-ray

result," and prescribing medical compression stockings "as needed for leg swelling").  It

does not appear that Plaintiff's abscess was treated during this visit.  Tr. at 1293-94.


As demonstrated here, and as the ALJ discussed, the record does not show

that any of Plaintiff's abscesses persisted for three months despite treatment as required

by Listing 8.04.  The ALJ, therefore, correctly determined that Plaintiff's impairment did not

meet Listing 8.04.  Having reviewed the decision, this Court finds that the ALJ's

determination was supported by substantial evidence and was not conclusory, as Plaintiff

asserts.  *See Kimberly W. v. Saul*, No. 8:19-CV-0203, 2020 WL 1322510, at *4-5

(N.D.N.Y. Mar. 20, 2020) (holding that the ALJ properly found that the medical record

failed to show that claimant's skin lesions were extensive as the Listing requires); *Gay v.

Colvin*, 3:16-CV-01693, 2018 WL 940545, at *2 (D. Conn. Feb. 16, 2018) (holding that the

claimant's skin lesions did not cause a very serious limitation where the ALJ noted

essentially normal physical examinations with normal gait and full strength in upper and

lower extremities); *Isureal v. Colvin*, 3:15-CV-11 221 (JGM), 2017 WL 9730203, at *18 (D.

Conn. May 31, 2017), *report and recommendation adopted sub nom. Isureal v. Berryhill*,

3:15-CV-00221 (JAM), 2018 WL 1409797 (D. Conn. Mar. 21, 2018) (stating that "the

record does not demonstrate that plaintiff had any skin lesions lasting three months . . .

and thus cannot meet or equal Listing 8.04"); *Rafferty v. Colvin*, 3:12-CV1554, 2014 WL

1875339, at *5-6 (N.D.N.Y. May 9, 2014) (affirming the ALJ's determination that Listing

8.03 was not met where evidence showed a variety of skin outbreaks, some mild and

some serious, but the severity and frequency of the condition did not constitute a "very serious limitation" as defined by Listing 8.00, and the condition responded well to treatment).

Plaintiff cites to a December 13, 2011 chest computer tomography (CT) scan, which identified a breast abscess that appeared to have increased in size since a June 2011 examination. However, Plaintiff concedes that it was "unclear," i.e., the evidence does not demonstrate, that the abscess had persisted the entire time between examinations. Dkt. No. 11-1, p. 22 (referring to Tr. at 319). In any case, this abscess presented prior to the start of the relevant period on January 30, 2012, and there is no evidence that Plaintiff received treatment continuously for the abscess from June to December 2011, or that the abscess very seriously limited her ability to ambulate or to use her extremities during that period. See Tr. at 306-11, 269-91, 293-305.

Moreover, as described above, the record does not establish that Plaintiff's abscesses, when present, caused "a very serious limitation," which is required to meet Listing 8.04. *See* 20 C.F.R. Part 404, Subpart P, App'x 1, § 8.00(C). As discussed, skin lesions meet this standard where they "very seriously limit the use of more than one extremity," or "very seriously limit your ability to ambulate." *Id*. As the examination notes summarized above make clear, there is no evidence that Plaintiff's abscesses met this criterion, as she retained a normal range of motion and was never noted to have difficulty with ambulation or use of her extremities due to her abscesses.

Plaintiff also argues that the ALJ did not support his allegations that Plaintiff was non-compliant with her insulin.  Dkt. No. 11-1, pp. 26-27.  This Court does not agree. As an initial matter, even if the ALJ erred in finding that she was non-compliant, Plaintiff's abscesses still would not meet the durational or severity requirements of Listing 8.04. And, contrary to Plaintiff's argument, Plaintiff's insulin non-compliance was substantiated by the record.  A September 15, 2015 treatment note from Plaintiff's emergency department visit for an abscess explicitly states, "Patient said that her blood sugars were elevated at home and she has been non[-]compliant with her insulin."  Tr. at 951; *see also* Tr. at 657 (referring to Tr. at 534-35).

Accordingly, this Court finds that the ALJ did not err in concluding that Plaintiff's impairment did not meet or equal Listing 8.04.  Tr. at 653.

**The ALJ Adequately Evaluated Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ did not adequately evaluate her credibility, including her subjective complaints of pain and the impact of her obesity on her activities of daily living.  Dkt. No. 11-1, pp. 27-29.  This Court finds that the ALJ evaluated Plaintiff's subjective statements consistent with the regulations and SSR 16-3p.

When assessing a claimant's subjective complaints, the ALJ must consider any conflicts between a claimant's statements and the rest of the evidence.  20 C.F.R. § 416.929(c)(4); SSR 16-3p, 2017 WL 5180304; *see also Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984) (stating that an ALJ has the discretion to arrive at an independent

judgment regarding the extent of claimant's symptoms).  Here, the ALJ appropriately considered, first and foremost, the objective medical evidence, and found that it was inconsistent with Plaintiff's claims that her symptoms were disabling.  20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").  For example, the ALJ noted that although Plaintiff testified that she could not sit, stand, or walk for an eight-hour workday, she rarely reported such functional limitations to her medical providers.  Tr. at 663.

The ALJ further explained, as a general matter, that Plaintiff's physical examinations showed that she was not in distress, did not exhibit pain behaviors, and showed normal gait and ambulation, and that Plaintiff did not report that she was unable to sit.  Tr. at 390, 397, 403- 04, 407, 442, 444, 536, 594, 597, 602, 611, 626, 630-31, 639, 641, 656-57, 658, 659, 663, 952, 1048, 1085, 1092, 1142, 1218, 1237, 1239, 1253, 1255. Indeed, as the ALJ noted, an October 2018 treatment note indicated that Plaintiff's general health was "excellent" (Tr. 660 (referring to Tr. 1237)), and none of her medical providers indicated that she was unable to perform the functional requirements of work as described in the RFC.  Tr. at 663.  In this regard, the examination findings and other objective medical evidence was not consistent with the degree of limitations alleged.  *See* 20 C.F.R. § 416.929(c)(2); SSR 16-3p ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.").

15

The ALJ properly considered that Plaintiff sought little treatment for her abscesses for extended periods of time, undermining her claim that they were disabling. Tr. at 663; 20 C.F.R. § 416.929(c)(3)(v) (stating that treatment is a relevant factor in considering subjective symptoms); *see also Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) (finding that the claimant's allegations of disability were undermined by his failure to seek regular treatment) (citing *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989)).

Consistent with the district court's remand order, the ALJ considered Plaintiff's subjective complaints, including her testimony and written statements, and determined that they were not fully consistent with the evidence.  Tr. at 663.  He acknowledged Plaintiff's statements that her activities of daily living were significantly limited due to pain, weakness, abscesses, and headaches, but noted that she never indicated to her treatment providers that she was so limited.  Tr. at 390, 397, 403- 04, 407, 442, 444, 536, 594, 597, 602, 611, 626, 630-31, 639, 641, 656-57, 658, 659, 663, 952, 1048, 1085, 1092, 1142, 1218, 1237, 1239, 1253, 1255.  Plaintiff has not offered proof that she complained to any of her doctors that she could not function because of her conditions.  *See Reynolds v. Colvin*, 570 F. App'x 45, 47 (2d Cir. 2014) ("A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

Lastly, Plaintiff argues that the ALJ failed to adequately consider the impact of her obesity on her functional capacity.  Dkt. No. 11-1, p. 28.  This Court does not agree. The ALJ acknowledged throughout the decision that Plaintiff was morbidly obese, but found that the restriction to sedentary exertion accounted for Plaintiff's obesity.  Tr. at 653-54, 656.  Sedentary work is the least physically demanding category of work under the regulations, requiring only occasional walking and standing, and never lifting more than ten pounds.  *See* 20 C.F.R. § 416.967 (listing, in ascending order, sedentary, light, medium, heavy, and very heavy work); SSRs 96-9p, 83-10; 20 C.F.R. Pt. 404, Subpt. P., App. 2 § 201.00(h)(4) ("'Sedentary work' represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have very serious functional limitations.").

Despite the relatively benign examination results and the absence of treatment for extensive periods, the ALJ credited Plaintiff's statements that she was limited due to pain and obesity and assessed a very restrictive RFC.  The Second Circuit Court of Appeals has repeatedly held that it is the function of the Commissioner to resolve evidentiary conflicts and weigh the evidence.  *See Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) ("[A]n ALJ's credibility determination is generally entitled to deference on appeal.") (citing *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("It is the function of the Secretary, not the [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.")). Having reviewed the record in its entirety, this Court finds that the ALJ's determination that Plaintiff's allegations were not fully consistent with the evidence of record must be upheld.

*See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (holding that the ALJ properly found that the objective medical evidence was inconsistent with the claimant's allegations of disabling pain).  For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
            March 26, 2021


                              *s/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**